[630 NYS2d 37]

Sandra Perez, Respondent, v Park Madison Professional Laboratories, Inc., Doing Business as Eastern Women's Center, Defendant, and Ing Yann Jeng, Appellant.

First Department, July 20, 1995

## APPEARANCES OF COUNSEL

*Michael J. Noonan* of counsel *(Fitzgerald & Fitzgerald,* attorneys), for respondent.

*Geoffrey R. Kaiser* of counsel *(Marvin Wexler, Mark Platt* and *Emily Rosdeitcher* with him on the brief; *Kornstein Veisz & Wexler,* attorneys), for appellant.

## OPINION OF THE COURT

ELLERIN, J.

The issue before us on this appeal is whether defendants failed to obtain plaintiff's informed consent before undertaking to perform the abortion procedure which is the basis of her underlying malpractice action.

On March 1, 1989, the 24-year-old unwed plaintiff, then 17 weeks' pregnant, consulted a gynecologist about options for terminating her pregnancy. The doctor referred her to Planned Parenthood at Columbia-Presbyterian Hospital because he was unable to perform a second trimester termination at his office. Upon visiting Planned Parenthood's offices on the following day, Ms. Perez was given a list of possible facilities where an abortion could be performed, including that of defendant, Park Madison Professional Laboratories, doing business as Eastern Women's Center (the Center), with which she made an appointment for the next day. She arrived at the Center on the morning of March 3rd, accompanied by two of her friends, and, after completing a form detailing her medical history, she was given a blood test, a urine test and a sonogram. Of particular significance in light of her present claim, she was then asked to read a six-page packet of materials that provided a detailed description of the abortion procedure itself as well as an extensive discussion of the "possible problems related to second trimester abortions" including the potential medical and emotional risks. After reading these materials, plaintiff met with a trained counselor, Alrena Bowie, who discussed with her the alternatives to abortion, the details of the actual abortion procedure and the risks

associated with the procedure. Plaintiff signed a consent form which she acknowledged, during her deposition testimony, she had read and fully understood. The consent form contained the following statements:

"The nature and purposes of the procedure have been fully explained and I have been informed of the expected benefits and complications from known and unknown causes and attendant discomforts and risks that may arise. I fully understand that the purpose of this abortion procedure is to end my pregnancy. I know that I can continue this pregnancy to its full term, but it is my personal choice to end it now.

"I acknowledge that no guarantees or assurances have been made to me concerning the results intended from the operational procedure and I understand that I may still be pregnant following the procedure.

"I further understand that, in accordance with applicable law, any tissues removed may be examined and retained for medical or educational purposes and may be disposed of in accordance with the customary practice.

"I have been given an opportunity to ask questions and all my questions have been answered fully and satisfactorily.

"I have read and fully understand the above and affirm that all the blank spaces have been completed prior to my signing."

The actual procedure was started later on that day by the insertion of dilators into her cervix. Prior to their insertion she was specifically told that once the dilators were inserted she was committed to completing the procedure and her written consent also included the statement that "I understand that once the dilators are inserted, I cannot change my decision to terminate my pregnancy by abortion". When plaintiff returned the following day, March 4th, defendant-appellant Dr. Ing Yann Jeng, without any further discussion with plaintiff, completed the procedure that had been commenced the day before. Some hours later plaintiff suffered extensive bleeding and was treated at Beth Israel Medical Center for a perforation of her uterus.

When plaintiff's mother, with whom plaintiff lived, learned of the abortion, recriminations ensued for "killing her grandchild". Commencement of the instant action followed, charging the clinic and Dr. Jeng with both malpractice in the manner in which the procedure was performed and in failing to obtain plaintiff's informed consent before the procedure was

undertaken in the first instance. In asserting the cause of action for lack of informed consent, plaintiff argues that she was not a proper candidate for the procedure, that it violated her religious beliefs, that she should have been talked out of it and that defendants did not try to stop her from going forward with the procedure.

After the completion of depositions, the individual defendant, Dr. Jeng, moved for summary judgment on plaintiff's cause of action for lack of informed consent. The IAS Court initially granted the motion, holding that "[i]t is undisputed that Jeng's first contact with the plaintiff occurred only after the abortion procedure had been irreversibly commenced". Subsequently, upon a motion for reconsideration based upon plaintiff's submission of excerpts from the deposition of Dr. Arnon, the acting medical director of the defendant clinic at the time of the procedure, the court reversed itself and denied summary judgment to defendant Jeng on the ground that there were disputed issues of fact as to whether his first contact with the plaintiff occurred only after the abortion procedure had been irreversibly commenced and whether the procedure was irreversible once the dilators had been inserted. We reverse.

This State has no statute singling out abortion from other medical procedures as requiring specific methods to assure that a woman's consent is informed. As in any case, Public Health Law § 2805-d (1) requires that the provider "disclose to the patient such alternatives thereto and the reasonably foreseeable risks and benefits involved as a reasonable medical * * * practitioner under similar circumstances would have disclosed, in a manner permitting the patient to make a knowledgeable evaluation." In order to prevail on a claim of lack of informed consent, plaintiff must also show that, had a reasonable person in her position been properly informed of the risks and alternatives, she would not have undergone the procedure (Public Health Law § 2805-d [3]).

As to the claim of not being adequately advised of the physical consequences that might ensue from the procedure, the record clearly establishes that plaintiff was advised of the possible risks of hemorrhage and perforation, as allegedly here occurred. While the brief submitted on her behalf claims that she never acknowledged being supplied with or reading the information allegedly supplied to her by the clinic, which included the information warning her of such risks, plaintiff never refuted the evidence that these materials were given to

her and her own deposition testimony established that she read everything that she was given.

Plaintiff's argument concerning the psychological harm which she has allegedly suffered is of a different tenor. According to plaintiff, this harm includes mental anguish, neurosis, guilt, sleeplessness and depression from the awareness that, by reason of defendant's negligence, she needlessly committed an act which is in violation of her deep-seated convictions. These alleged injuries are not claimed to be a result of defendants' negligence in the manner in which the abortion was performed but, rather, a result of the very performance of the abortion itself and the consequential termination of her pregnancy. Plaintiff thus argues that she should have been informed prior to the abortion that undergoing the procedure itself could result in such severe regret as to cause psychological harm.

However, the evidence in this case shows that plaintiff was specifically told of the risk of sadness and depression and the possibility of serious depression as a result of an abortion. Thus, even were plaintiff able to establish that awareness of these risks was necessary to a knowledgeable decision and that a reasonable person would not have undergone the abortion having known of them, summary judgment is nevertheless warranted as there is no question of fact that she was informed of these risks. Unlike the situation in *Martinez v Long Is. Jewish Hillside Med. Ctr.* (70 NY2d 697), cited by plaintiff, there is no claim here that plaintiff's decision to have an abortion was based on negligent misinformation that her child would be severely disabled or, indeed, on misinformation of any sort that falsely persuaded her that an abortion would be beneficial. Here, plaintiff was accurately informed as to the status of her pregnancy and was fully aware that the abortion would terminate it. Thus, unlike the plaintiff in *Martinez,* who had an abortion solely because she was falsely informed that the fetus was disabled and otherwise would not have considered having an abortion, there can be no claim that plaintiff was persuaded to have an abortion that was, without her knowledge, "needless" according to her own convictions. Having received accurate information concerning her medical condition at the time of her abortion, as well as of all the physical and emotional risks attendant upon the procedure, plaintiff was obviously the only person in a position to know whether an abortion under those circumstances was in violation of her personal convictions. She cannot seek to hold

defendant liable because those convictions have apparently changed since she consented to and underwent the procedure.

Indeed, to interpret Public Health Law § 2805-d in the way that plaintiff argues it should be interpreted would be to render its application unconstitutional. Plaintiff, through her own testimony, as well as that of her experts, argues that an attempt should have been made to talk her out of the abortion and that because she was in a "crisis pregnancy" she should have been referred for several days of independent counseling. Clearly, these are not permissible requirements. In *Akron v Akron Ctr. for Reproductive Health* (462 US 416, 445, n 36) the Supreme Court held unconstitutional a State statute that required physicians to deliver to patients seeking an abortion a list of particulars, including " '[t]hat abortion is a major surgical procedure which can result in serious complications, including hemorrhage, perforated uterus, infection, menstrual disturbances, sterility and miscarriage and prematurity in subsequent pregnancies; and that abortion may leave essentially unaffected or may worsen any existing psychological problems she may have, and can result in severe emotional disturbances' ". The Court found that recitation of this " 'parade of horribles' " would improperly discourage women from having an abortion *(Akron v Akron Ctr. for Reproductive Health, supra,* at 445). Since plaintiff's definition of a "crisis pregnancy" appears to include any pregnancy which is not wanted, she appears to be arguing that anyone seeking an abortion should be referred for extensive counseling during which an attempt should be made to talk her out of the procedure. Clearly, such methods would be, if required by statute, unconstitutional.

Here, the unrefuted evidence shows that plaintiff was thoroughly advised of the risks and alternatives to her abortion and that she gave her informed consent to the procedure. Moreover, there is no merit to the contention that Dr. Jeng, who first saw plaintiff on the day after the dilators had initially been inserted, was negligent because he did not advise her again of all the risks, both physical and emotional, and did not seek at that point to dissuade her from completing the abortion procedure which it is claimed may not have been irreversible.

Despite plaintiff's argument, it is clear that, regardless of when he personally began to treat plaintiff, defendant Jeng did not have an independent duty to again obtain her informed consent irrespective of whether she had given it to the clinic on the previous day. On the contrary, a doctor is

entitled to rely on the informed consent given by his or her patient to others and need not again personally interview the patient as to this matter, although, of course, such reliance comes with the risk that he or she will be held liable for any deficiency in the information provided to the patient by those to whom this important duty has been delegated (see, Shkolnik v Hospital for Joint Diseases Orthopaedic Inst., 211 AD2d 347; Sangiuolo v Leventhal, 132 Misc 2d 680, 684-685; see also, Hill v Seward, 122 Misc 2d 375, 376). Thus, the point at which defendant Jeng actually first saw plaintiff is immaterial. He was the physician of record who "provid[ed] the professional treatment" (Public Health Law § 2805-d [1]) and his delegation of preliminary procedures to others would not obviate his personal obligation to obtain his patient's consent (see, 76 NY Jur 2d, Malpractice, § 179, at 199). However, as already indicated, the extensive information and counseling given to plaintiff by the clinic personnel provided her with all the necessary information to enable her to make the requisite knowledgeable decision and Dr. Jeng's reliance thereon fulfilled his obligations in that regard. Whether or not the abortion procedure was reversible at the time he first saw plaintiff is wholly irrelevant on the dispositive issue of whether plaintiff here received all the necessary information to enable her to make a knowledgeable decision. On this record there is no question that defendants fully met their obligation in that regard and that the consent given by plaintiff to undergoing the procedure was fully informed.

Accordingly, the order of Supreme Court, Bronx County (Hansel McGee, J.), entered September 28, 1993, which, inter alia, granted plaintiff's cross motion for renewal and, upon renewal, denied defendant-appellant's motion for partial summary judgment dismissing plaintiff's second cause of action as against him, should be unanimously reversed, insofar as appealed from, on the law, defendant-appellant's motion granted, and plaintiff's second cause of action, alleging a lack of informed consent, dismissed as against defendant-appellant, without costs.

SULLIVAN, J. P., KUPFERMAN and WILLIAMS, JJ., concur.

Order, Supreme Court, Bronx County, entered on or about September 28, 1993, reversed, insofar as appealed from, on the law, without costs, defendant-appellant's motion for partial summary judgment granted, and plaintiff's second cause of action dismissed.