[Cite as *White v. Durrani*, 2021-Ohio-566.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

SOPHIA WHITE,

  and

ANTONIO WHITE,

    Plaintiffs-Appellants,

  vs.

ABUBAKAR ATIQ DURRANI, M.D.,

  and

CENTER FOR ADVANCED SPINE
TECHNOLOGIES, INC.,

    Defendants-Appellees.

:

:

:

:

:

:

:

:

:

:

APPEAL NO. C-190402
TRIAL NO. A-1600232

*O P I N I O N.*

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  March 3, 2021

*Robert A. Winter, Jr.*, and *The Deters Law Firm Co. II, P.A., James F. Maus, Shawn Crawford* and *Alex Petraglia*, for Plaintiffs-Appellants,

*Taft Stettinius & Hollister LLP, Aaron M. Herzig, Russell S. Sayre* and *Philip D. Williamson*, for Defendants-Appellees.

**MYERS, Judge.**

{¶1} Sophia and Antonio White appeal the trial court's entry of summary judgment in favor of Abubakar Atiq Durrani, M.D., and the Center for Advanced Spine Technologies, Inc., ("CAST") on their vicarious-liability claim stemming from a surgery performed on Mrs. White by CAST physician, Nael Shanti, M.D., and the trial court's entry granting a directed verdict in favor of Dr. Durrani on their claims for negligence and lack of informed consent, and in favor of CAST and Dr. Durrani on their claims for fraud. For the reasons that follow, we affirm the judgment of the trial court.

## I.  Facts and Procedural History

{¶2} After injuring her back at work, Sophia White sought treatment with Dr. Shanti in January 2012. Dr. Shanti was employed by CAST, a corporation owned by Dr. Durrani. Initially, Dr. Shanti recommended treating Mrs. White's back pain with injections, but when the injections failed to provide her relief, Dr. Shanti recommended back surgery.

{¶3} Prior to the surgery, Mrs. White executed two informed-consent forms, one at the CAST office several days before the surgery and one at West Chester Hospital on the day of the surgery. The CAST form indicated that Mrs. White consented to an "L5-S1 Laminotomy & Discectomy," and the hospital form indicated that she consented to a "Bilateral Lumbar 5-Sacral 1 Laminotomy and Discectomy," to be performed by "Dr. Shanti."

{¶4} Dr. Shanti performed the surgery on November 12, 2012. The hospital record indicated that Dr. Shanti performed a bilateral L5-S1 laminotomy with

bilateral recess decompression, but did not do a discectomy. After the surgery, Mrs. White continued to suffer back pain and had to start walking with a cane.

{¶5} In August 2014, almost two years after the surgery, the Whites executed a document entitled "RELEASE OF ALL CLAIMS WITH HOLD HARMLESS" under which they released and discharged Dr. Shanti from any "claims arising out of medical services, surgery, follow up or medical treatment of any kind provided by Nael Shanti, M.D. to the Plaintiffs," and which set forth that "[t]here is no admission of liability hereunder by Nael Shanti, M.D., in any fashion[.]"

{¶6} In January 2016, the Whites sued Dr. Durrani and CAST.[1] They did not name Dr. Shanti in the suit. The Whites asserted claims against Dr. Durrani for negligence, battery, lack of informed consent, and fraud, and against CAST (and Dr. Durrani as the sole owner of CAST) for vicarious liability, negligent hiring, retention and supervision, and fraud.[2]

{¶7} Prior to trial, Dr. Durrani and CAST moved for summary judgment on the Whites' vicarious-liability and negligent-hiring claims, and the trial court granted the motion. The court determined that Dr. Durrani and CAST could not be held liable under a theory of vicarious liability for Dr. Shanti's actions because the Whites released Dr. Shanti from liability, the Whites did not name Dr. Shanti in the current suit, and the action against Dr. Shanti was barred by the statute of limitations.

{¶8} The Whites' remaining claims were tried before a jury. At the conclusion of the Whites' case, Dr. Durrani and CAST moved for a directed verdict, which the trial court granted. This appeal followed.

---

[1] The Whites also named West Chester Hospital, LLC, and UC Health as defendants, but later dismissed with prejudice their claims against those entities.
[2] The Whites later withdrew their claims against Dr. Durrani for intentional infliction of emotional distress, spoliation of evidence and loss of consortium, and against CAST for spoliation of evidence, violation of the Ohio Consumer Sales Protection Act, and loss of consortium.

## II. Directed Verdict

{¶9} In their first assignment of error, the Whites argue that the trial court erred by granting the motion for a directed verdict on their claims against Dr. Durrani for negligence and lack of informed consent and their claims against both Dr. Durrani and CAST for fraud. They raise no argument on appeal as to the trial court's granting of the motion for a directed verdict on their claim against Dr. Durrani for battery.

{¶10} Under Civ.R. 50(A)(4), a motion for a directed verdict should be granted when, after construing the evidence most strongly in favor of the party against whom the motion is directed, the trial court finds that upon any determinative issue, "reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." *Rieger v. Giant Eagle, Inc.*, 157 Ohio St.3d 512, 2019-Ohio-3745, 138 N.E.3d 1121, ¶ 9, quoting *White v. Leimbach*, 131 Ohio St.3d 21, 2011-Ohio-6238, 959 N.E.2d 1033, ¶ 22.

{¶11} In considering a motion for a directed verdict under Civ.R. 50(A)(4), the trial court must determine whether there is "any evidence of substantive probative value that favors the nonmoving party." *Id.* "Thus, although a motion for a directed verdict does not present a question of fact, when deciding a motion for a directed verdict the court must " 'review and consider the evidence.' " *Id.*, quoting *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 68, 430 N.E.2d 935 (1982). In order for a plaintiff's claim to be submitted to a jury, "a plaintiff must produce some evidence for each element essential to establish liability." *Id.* We review a trial court's decision to grant or deny a motion for a directed verdict under Civ.R. 50(A)(4) de novo. *Id.* at ¶ 8.

### A. Trial Court Applied the Proper Standard

{¶12} The Whites argue that in considering the motion for a directed verdict, the trial court improperly usurped the function of the jury by weighing the evidence and making credibility determinations about the witnesses. Specifically, they contend that the trial court drew conclusions about the truth of certain testimony by Mrs. White and by Dr. Shanti "and found it wanting," directing us to a certain page in the trial transcript. However, the transcript does not support the Whites' contention about the trial court's consideration of witness credibility. On the contrary, the transcript supports the trial court's proper consideration of the motion for a directed verdict. The court said, "Considering the evidence presented by plaintiff Sophia White, most strongly in favor of the plaintiff, it's my finding that reasonable minds could come to but one conclusion, that there was insufficient evidence to conclude that Dr. Durrani was involved in any way in the medical treatment of Sophia White" or that the Whites could prevail on any of their claims against Dr. Durrani or CAST.

### B. Negligence Claim Against Dr. Durrani

{¶13} The Whites argue that the trial court improperly granted a directed verdict on their negligence claim against Dr. Durrani. In medical-negligence claims, a plaintiff must generally prove: "[a] duty running from the defendant to the plaintiff, breach of duty by that defendant, damages suffered by the plaintiff, and a proximate cause relationship between the breach of duty and the damages." *Powell v. Hawkins*, 175 Ohio App.3d 138, 2007-Ohio-3557, 885 N.E.2d 958, ¶ 13 (1st Dist.), quoting *Hester v. Dwivedi*, 89 Ohio St.3d 575, 578, 733 N.E.2d 1161 (2000).

{¶14}   The duty of care owed by a physician is predicated on the existence of a physician-patient relationship.  *Lownsbury v. VanBuren*, 94 Ohio St.3d 231, 235, 762 N.E.2d 354 (2002).  As the Supreme Court of Ohio has explained:

> "The physician-patient relationship arises out of an express or implied contract which imposes on the physician an obligation to utilize the requisite degree of care and skill during the course of the relationship. The relationship is a consensual one and is created when the physician performs professional services which another person accepts for the purpose of medical treatment.
>
> "The physician-patient relationship is a fiduciary one based on trust and confidence and obligating the physician to exercise good faith.  As part of this relationship, both parties envision that the patient will rely on the judgment and expertise of the physician.  The relationship is predicated on the proposition that the patient seeks out and obtains the physician's services because the physician possesses special knowledge and skill in diagnosing and treating diseases and injuries which the patient lacks."  (Citations omitted.)

*Id.*, quoting *Tracy v. Merrell Dow Pharmaceuticals, Inc.*, 58 Ohio St.3d 147, 150, 569 N.E.2d 875 (1991).

{¶15}   The Whites argue that they presented evidence that Dr. Durrani had a physician-patient relationship with Mrs. White giving rise to a duty of care, which they claim he breached.  We first note that the Whites presented no evidence that Mrs. White ever met with Dr. Durrani prior to the surgery.  Nor did they present any

evidence that she consulted with him. Rather, the Whites point to two portions of the transcript which they claim support their position.

{¶16} First, the Whites point to Mrs. White's testimony that when she woke from surgery, Dr. Durrani told her, "I'm here to see how you going to be walking [sic]," and "he stood there while [the nurse] walked me at the end of the hall and brought me back to the room." However, Mrs. White's testimony made clear that the only physician she saw at CAST was Dr. Shanti and that her understanding was that Dr. Shanti alone would perform her surgery. When asked if Dr. Shanti had ever mentioned that he was going to do the surgery with Dr. Durrani or that Dr. Durrani would be following up with her care and treatment, Mrs. White said, "No." In addition, she acknowledged that the hospital surgery record indicated that Dr. Durrani was "out" the day of her surgery and Dr. Shanti was the only surgeon.

{¶17} The Whites also direct us to the transcript of Dr. Shanti's video deposition testimony. We note that the transcript was not a trial exhibit. Rather, the video deposition was played for the jury. Thus, the court and jury never considered the transcript, and it is irrelevant what it said. In fact, reliance on the transcript over the deposition itself would have been error.

{¶18} In any event, according to the transcript of the deposition, when asked if Dr. Durrani was involved in "the planning and execution of the surgical procedures that were recommended" for Mrs. White, Dr. Shanti replied, "I don't recall that in this specific case. He was directly involved in that recommendation." The court and jury, of course, did not rely on this transcript. When the evidence itself is viewed (the video deposition), it is clear that the doctor said, "I don't recall that in this specific case, if he was directly involved in that recommendation or not." In

addition, it is clear from the context of the question and answer and the ensuing question by counsel[3] that the court reporter incorrectly punctuated the transcript by inserting a period rather than a comma before the phrase, "[h]e was directly involved in that recommendation." Dr. Shanti's testimony provides no support for the Whites' claim that Dr. Durrani was involved in the recommendation for surgery.

{¶19} The Whites presented no evidence that Dr. Durrani recommended or performed surgery on Mrs. White. Because Dr. Durrani did not have a physician-patient relationship with Mrs. White with respect to the surgery that she claims was negligently performed, Dr. Durrani owed Mrs. White no duty of care. Therefore, the trial court properly granted a directed verdict on the White's negligence claim against Dr. Durrani.

### C. Lack-of-Informed-Consent Claim against Dr. Durrani

{¶20} The Whites argue that the trial court improperly granted a directed verdict in favor of Dr. Durrani on their lack-of-informed-consent claim. The Whites asserted that the informed-consent forms signed by Mrs. White "failed to fully cover all the information necessary and required for the procedures and surgical procedures performed by Dr. Durrani," and that "Dr. Durrani failed to inform Plaintiff of material risks and dangers inherent or potentially involved with her surgery and procedures."

{¶21} Prior to performing a medical procedure, a physician has a duty to obtain the patient's informed consent. *See Leimbach*, 131 Ohio St.3d 21, 2011-Ohio-6238, 959 N.E.3d 1033, at ¶ 23-33. The elements of a cause of action for a

---

[3] Counsel's follow-up question was: "All right. It would not be unusual, though, given your relationship and how the office operated, for him to be involved in the planning decisions; is that right?"

physician's failure to obtain informed consent are: (1) the physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any; (2) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the patient's injury; and (3) a reasonable person in the patient's position would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed prior to the therapy. *Id.* at ¶ 25-29.

{¶22} Because Dr. Durrani did not have a physician-patient relationship with Mrs. White with respect to the surgery she claims was negligently performed, he did not owe her a duty to obtain her consent to the surgery. Therefore, the trial court properly granted a directed verdict on the Whites' informed-consent claim.

### D. Fraud Claims against CAST and Dr. Durrani

{¶23} The Whites argue that the trial court improperly granted a directed verdict in favor of CAST and Dr. Durrani on the Whites' fraud claims. Specifically, the Whites argue that CAST and Dr. Durrani made false representations about the number of times that they treated Mrs. White to "trick" her and her insurers into paying for visits that never occurred.

{¶24} The elements of a fraud claim are (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the

reliance. *March v. Statman*, 1st Dist. Hamilton No. C-150337, 2016-Ohio-2846, ¶ 18.

{¶25} The Whites point to Mrs. White's testimony that she had been seen at CAST about six times and to an exhibit that purportedly showed that her insurers were billed for 16 visits. However, Mrs. White testified that she never saw the bills, so she could not have relied upon them, justifiably or otherwise. The Whites put forth no evidence showing that CAST or Dr. Durrani made a false misrepresentation to the Whites or that the Whites relied upon the misrepresentation or that they suffered injury as a result. Therefore, the trial court properly granted a directed verdict on the fraud claims.

### E. Conclusion as to the Directed Verdict

{¶26} Because the trial court properly granted a directed verdict in favor of CAST and Dr. Durrani on the Whites' negligence, lack-of-informed-consent, and fraud claims, we overrule the first assignment of error.

### III. Summary Judgment

{¶27} In their second assignment of error, the Whites argue that the trial court erred by granting summary judgment in favor of CAST and Dr. Durrani as the sole owner of CAST on their vicarious-liability claim. They raise no argument as to the summary judgment entered on their negligent-hiring claim.

{¶28} We review a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriately granted when there is no genuine issue of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only one

reasonable conclusion that is adverse to that party. *State ex rel. Howard v. Ferreri*, 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994).

{¶29} The trial court determined that CAST and Dr. Durrani could not be held liable under a theory of vicarious liability for Dr. Shanti's actions because the Whites released Dr. Shanti from liability, the Whites did not name Dr. Shanti in the current suit, and the action against Dr. Shanti was barred by the statute of limitations.

{¶30} Under the doctrine of respondeat superior, an employer or principal can be held vicariously liable for the tort of its employee or agent committed within the scope of employment. *Sitton v. Massage Odyssey, LLC*, 2020-Ohio-4282, 158 N.E.3d 156, ¶ 8 (1st Dist.). However, as the Supreme Court of Ohio explained in *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, ¶ 22, "[i]f there is no liability assigned to the agent, it logically follows that there can be no liability imposed upon the principal for the agent's actions." (Emphasis deleted.) Therefore, "[a] settlement with and release of the servant will exonerate the master." *Wuerth* at ¶ 22, quoting *Losito v. Kruse*, 136 Ohio St. 183, 188, 24 N.E.2d 705 (1940).

{¶31} Absent direct liability on the part of an employee physician, the corporation that employed the physician cannot be vicariously liable. *Rush v. Univ. of Cincinnati Physicians, Inc.*, 2016-Ohio-947, 62 N.E.3d 583, ¶ 23 (1st Dist.); *Moore v. Mount Carmel Health Sys.*, 10th Dist. Franklin No. 2017APE-10-754, 2020-Ohio-6695, ¶ 51; *Henry v. Mandell-Brown*, 1st Dist. Hamilton No. C-090752, 2010-Ohio-3832, ¶ 14. Therefore, a plaintiff's settlement agreement releasing claims against a tortfeasor physician extinguishes the plaintiff's vicarious-liability claims against the

physician's employer. *Wilson v. Durrani*, 1st Dist. Hamilton No. C-130324, 2014-Ohio-1023, ¶ 15.

{¶32} Here, the principals, CAST and Dr. Durrani as the owner of CAST, could be vicariously liable only if their agent, Dr. Shanti, could be held directly liable. *See Wuerth* at ¶ 22. The Whites settled with and released Dr. Shanti from liability, thereby exonerating Dr. Durrani and CAST from any liability for Dr. Shanti's actions. *Id.* Because Dr. Shanti could not be held primarily liable for his actions against the Whites, CAST and Dr. Durrani as the owner of CAST could not be held vicariously liable for Dr. Shanti's actions. *Id.*

{¶33} The Whites argue, though, that even with their release of Dr. Shanti, the acts of Dr. Shanti continue to be imputed to Dr. Durrani and CAST. They rely on the Supreme Court of Ohio's statement in *State ex rel. Sawicki v. Lucas Cty. Court of Common Pleas*, 126 Ohio St.3d 198, 2010-Ohio-3299, 931 N.E.2d 1082, ¶ 28, that "[a] private employer may still be liable even if the employee is personally immune, for the doctrine of respondeat superior operates by imputing to the employer the acts of the tortfeasor, not the tortfeasor's liability."

{¶34} In *Sawicki*, the common pleas court stayed a vicarious-liability claim against a physician's private employer pending a ruling from the Court of Claims on whether the physician, who was also employed by the state at the time of the alleged negligence, was subject to personal immunity as a state employee. *Sawicki* at ¶ 5. The Supreme Court affirmed the granting of a writ of procedendo compelling the common pleas court to vacate its stay. *Id.* at ¶ 32. The court held that "[n]o reasonable purpose is served by requiring litigants with respondeat superior claims against a *private* employer to first have the Court of Claims determine the

employee's immunity as a state employee when that determination is immaterial to the private employer's vicarious liability." *Id.* at ¶ 21.

{¶35} The *Sawicki* court noted that its decision was based on "the application of immunity," and did not disturb its vicarious-liability precedent. *Id.* at ¶ 29 ("We have held that a hospital cannot be held liable under a derivate claim of vicarious liability when the physician cannot be held primarily liable"). The court explained that "a determination of immunity is not a determination of liability," and that immunity is merely "an initial step in litigation to determine whether the state will be liable for any damages caused [by] its employee's actions." *Id.* at ¶ 29, quoting *Johns v. Univ. of Cincinnati Med. Assn., Inc.*, 101 Ohio St.3d 234, 2004-Ohio-824, 804 N.E.2d 19, ¶ 37. Contrary to the Whites' suggestion, *Sawicki* did not create an exception to the principles of vicarious liability set forth in *Wuerth. See Moore*, 10th Dist. Franklin No. 2017APE-10-754, 2020-Ohio-6695, at ¶ 51 (declining to apply *Sawicki* and following the Tenth District precedent applying *Wuerth*). Therefore, under *Wuerth* and our precedent in *Rush, Henry,* and *Wilson,* each decided after *Sawicki*, we hold that the Whites' settlement agreement releasing claims against Dr. Shanti barred their vicarious-liability claim against CAST and Dr. Durrani.

{¶36} In this case, CAST and Dr. Durrani could not be held vicariously liable for the conduct of Dr. Shanti where Dr. Shanti could not be held directly liable for the conduct. Therefore, the trial court properly granted summary judgment in favor of CAST and Dr. Durrani on the Whites' vicarious-liability claim. We overrule the second assignment of error.

## IV. Conclusion

{¶37} Because the trial court properly granted a directed verdict in favor of Dr. Durrani on the Whites' claims for negligence and lack of informed consent and in favor of CAST and Dr. Durrani on the Whites' fraud claims, and properly granted summary judgment in favor of CAST and Dr. Durrani on the Whites' vicarious-liability claim, we affirm the trial court's judgment.

Judgment affirmed.

**ZAYAS, P.J.**, and **CROUSE, J.**, concur.

Please note:

The court has recorded its own entry this date.