[627 NYS2d 353]

Monica Shkolnik, Respondent, v Hospital for Joint Diseases Orthopaedic Institute et al., Defendants, and Ronald M. Krinick et al., Appellants.

First Department, May 30, 1995

## APPEARANCES OF COUNSEL

*Lori Ann Marano* of counsel *(Jacqueline Mandell* on the brief; *Schiavetti, Geisler, Corgan, Soscia, DeVito, Gabriele & Nicholson,* attorneys), for appellants.

*Jack S. Dweck* of counsel *(Richard A. Hubell* and *Stuart M. Dweck* on the brief; *Feiden Dweck & Sladkus,* attorneys), for respondent.

## OPINION OF THE COURT

WILLIAMS, J.

The issue on this appeal, a question previously undecided by this Court, is whether a referring physician may be held liable for failing to obtain a patient's informed consent where that informed consent was obtained by the treating physician to whom the patient was referred. It is our holding that where an informed consent is obtained by the treating physician, the failure to do so by the referring physician is not a basis for liability.

This matter arose when the plaintiff, Monica Shkolnik, sought treatment from defendants Dr. Krinick and Seaport Orthopaedics on July 28, 1986 for, *inter alia,* "clicking" in her knee. Dr. Krinick referred her to a radiologist, codefendant Dr. Shankman, for an arthrogram, a procedure which allows for discovery of torn cartilage or other meniscal tear by an X ray. The X ray is taken after the area to be examined is injected with dye and air then manipulated. The dye's presence in the area allows a diagnosis to be made.

Soon after Dr. Shankman performed the arthrogram on July 30, 1986, plaintiff's knee became swollen, sore and red, and she contracted a low-grade fever. She returned to Dr. Krinick's office on August 1, 1986 where he, observing a limited range in motion, judged the problem to be a reaction to the dye injection. However, he drained fluid from the knee and had it cultured to determine whether there was an infection; pending those results, he gave plaintiff a prescription for antibiotics.

Dissatisfied with Dr. Krinick's treatment, plaintiff went to

Dr. Marcove who, on August 4, 1986, diagnosed the problem as a bacterial infection. He felt that surgery was necessary to protect the knee joint from destruction by the infection and such surgery was performed on August 6, 1986. Plaintiff was hospitalized for six weeks. Subsequently, she commenced this action.

Plaintiff alleged, *inter alia,* that both doctors failed to obtain Ms. Shkolnik's informed consent before the arthrogram procedure; that Dr. Shankman negligently performed the arthrogram; and that Dr. Krinick was negligent in diagnosing the infection by failing to submit the knee joint fluid culture to the laboratory within a reasonable time after it was drawn. Defendants answered, *inter alia,* that each doctor had informed plaintiff of material risks and alternatives to the procedure and had received her consent to perform it, and that plaintiff suffered a reaction to the dye rather than an infection as a result of the arthrogram.

At trial, Dr. Krinick testified that he had not gotten a consent in writing from plaintiff to perform an arthrogram, but he had discussed it with her as one of four possible treatments. Plaintiff disputed this testimony stating that Dr. Krinick never suggested alternative treatments or the risks involved with an arthrogram. Dr. Shankman testified that he explained to plaintiff the risks involved with an arthrogram, including allergic reaction to the dye, inflammation and irritation of the joint also related to the dye, and infection due to external bacteria which could be introduced into the joint. Dr. Shankman testified that plaintiff signed a consent form which he was unable to produce at trial. Plaintiff's testimony was that Dr. Shankman only informed her of the risks and details of the arthrogram after he had begun the procedure. Medical experts testified on behalf of all parties.

The jury found that Dr. Krinick, the referring physician, failed to disclose reasonably foreseeable risks or alternatives which would have allowed plaintiff to make an informed decision as to whether to undergo the arthrogram; that a reasonably prudent person in plaintiff's position would not have undergone the arthrogram had she been properly informed; that Dr. Krinick's failure to obtain her informed consent was the proximate cause of her injuries; that he was not negligent in failing to diagnose the infection; but that he was 100% liable for plaintiff's physical pain and suffering from the date of the accident to the time of trial in the amount of $175,000. The jury also concluded that the treating

physician, Dr. Shankman, had departed from accepted standards of medical practice with regard to the performance of the arthrogram procedure, but that the departure was not the proximate cause of the infection which resulted in plaintiff's injuries; that Dr. Shankman did properly disclose risks and alternatives to plaintiff prior to the arthrogram, allowing her to give an informed consent to the procedure; and that Dr. Shankman was not liable for plaintiff's injuries. Defendants made a posttrial motion to dismiss the complaint or, alternatively, for a new trial on the issue of informed consent. This motion was denied based on the fact that notices of appeal and cross appeal had been filed by defendants and plaintiff, respectively, and because this Court was deemed better able to decide the issues since the parties did not have a trial transcript at the time of the motion.

The jury's findings here, that the treating physician's negligent treatment, after obtaining plaintiff's informed consent, was not the proximate cause of the injury and that he be exonerated of liability, but that the referring physician's failure to obtain informed consent was the proximate cause of the injury and that he was 100% liable, were patently inconsistent and warranted granting the motion to dismiss *(Brandon v Karp,* 112 AD2d 490, 491; *Hylick v Halweil,* 112 AD2d 400).

In order to recover for medical malpractice based upon lack of informed consent, a patient must establish that the physician failed to disclose material risks, benefits and alternatives to the medical procedure, that a reasonably prudent person in patient's circumstances having been so informed would not have undergone such procedure, and that lack of informed consent was the proximate cause of the injury (Public Health Law § 2805-d [1], [3]; *Bernard v Block,* 176 AD2d 843, 848; *Brandon v Karp, supra,* at 492-493).

Under the circumstances, plaintiff did not meet her burden as to Dr. Krinick. Although she successfully established his failure to disclose the risks and the unlikelihood of her undergoing the procedure had she known of the alternatives, she did not establish that Dr. Krinick's failure to obtain an informed consent was the proximate cause of the injury. Clearly, it was Dr. Shankman's alleged negligent performance of the procedure that proximately caused the injury; and his procurement of informed consent broke any chain of causation leading back to Dr. Krinick.

While there is little New York law on the question posed by this case, that which exists supports the position that Dr. Krinick not be held liable for his failure to initially obtain informed consent here. *Sangiuolo v Leventhal* (132 Misc 2d 680) held that a referring physician's receipt of an informed consent may operate to the benefit of a treating physician where the treating physician failed to advise the patient of the risks, benefits and alternatives to the treatment. A corollary to this holding, that a referring physician should be allowed to benefit from consent procured by the treating physician, inasmuch as the treating physician will be in a better position to give the patient more detailed information at a point in time closer to the performance of the medical procedure, is not only an indisputably sensible rule, but also speaks directly to the issue at bar.

The Second Department held in *Spinosa v Weinstein* (168 AD2d 32, 39-40, citing *Nisenholtz v Mount Sinai Hosp.,* 126 Misc 2d 658, 663) that *either* the prescribing physician or the treating physician is obligated to obtain the patient's informed consent, tracking the language of Public Health Law § 2805-d (1). This holding also readily comprehends the circumstances at bar.

Finally, a Third Department case, *Rich v Diokno* (179 AD2d 987), held that a referring physician's negligence may be superseded by knowledge of the treating physician, which breaks the chain of causation. In *Rich,* the patient's death was held not to be caused by the referring doctor's failure to advise the treating doctor that the patient had eaten prior to surgery where the treating doctor had been so informed by a nurse. *Rich* is analogous to this matter in that the ultimate issue in each case is similar: for purposes of attributing proximate cause, to what extent will the negligence of a referring doctor be imputed to a treating doctor, where an intervening cause exists?

Thus, in holding today that an informed consent obtained by a treating physician may cure the failure of the referring physician to obtain consent, we do little more than take note of and apply a sensible outgrowth of doctrine in this area of the law.

Having held that Dr. Krinick is not liable as a matter of law, we are constrained to dismiss the complaint here inasmuch as plaintiff's withdrawal of her cross appeal effectively renders Dr. Shankman's nonliability law of the case. Accord-

ingly, the judgment of Supreme Court, New York County (Carmen Ciparick, J.), entered November 3, 1993, which awarded the plaintiff, upon jury verdict, $175,000 plus interest in the amount of $690.41 together with costs and disbursements of $850 against the defendants-appellants, and the order of the same court (Karla Moskowitz, J.), entered on or about February 14, 1994, which denied defendants' posttrial motion to dismiss the plaintiff's complaint, or in the alternative, vacate the jury verdict and grant a new trial on the issue of informed consent, unanimously reversed, on the law and facts, the jury award vacated and the complaint dismissed, without costs.

MURPHY, P. J., ROSENBERGER and NARDELLI, JJ., concur.

Judgment, Supreme Court, New York County, entered November 3, 1993, which awarded the plaintiff, upon jury verdict, $175,000 plus interest in the amount of $690.41, together with costs and disbursements of $850 against the defendants-appellants, and order, same court, entered on or about February 14, 1994, which denied defendants' posttrial motion to dismiss the plaintiff's complaint, or in the alternative, vacate the jury verdict and grant a new trial on the issue of informed consent, unanimously reversed, on the law and facts, without costs, the jury award vacated and the complaint dismissed.