[Cite as *Walls v. Durrani*, 2021-Ohio-4329.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| KATHERINE WALLS, | : | APPEAL NO. C-200167 |
| | | TRIAL NO. A-1506955 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| ABUBAKAR ATIQ DURRANI, M.D., | : | |
| and | : | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : | |
| | : | |
| Defendants-Appellants. | | |


Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  December 10, 2021


*Robert A. Winter Jr.*, and *The Deters Law Firm Co. II, P.A., James F. Maus* and *Alex Petraglia,* for Plaintiff-Appellee.

*Taft Stettinius & Hollister LLP, Philip D. Williamson, Aaron M. Herzig, Russell S. Sayre,* and *Anna M. Greve*, and *Lindhorst & Dreidame Co., LPA, Michael F. Lyon* and *James F. Brockman*, for Defendants-Appellants.

**BERGERON, Judge.**

{¶1}    This is a medical malpractice case with a twist.  The surgeon found liable by the jury, defendant-appellant Dr. Abubakar Atiq Durrani, did not actually perform the surgery causing the injury.  Instead, he recommended a more invasive form of surgery that the operating surgeon and plaintiff-appellee Katherine Walls opted not to pursue, electing for a more conservative surgical path.  These facts create a dispositive causation problem given that Dr. Durrani neither wielded the surgical knife nor recommended the operation that was actually performed.  We accordingly reverse the trial court's judgment in favor of Ms. Walls and remand for entry of judgment in favor of defendants.

I.

{¶2}    Ms. Walls suffered a back injury in 1995 during her service in the United States Army, resulting in chronic back and leg pain for most of her adult life. Having aggravated her back injury at work around Christmas of 2010, and desperate for relief that conservative care through the Veteran's Administration could not provide, Ms. Walls began to explore her private treatment options through Medicaid. In late 2011, a neurosurgeon at the Mayfield Brain and Spine Clinic found degenerative disc disease in Ms. Walls's lower back.  He advised her that she could either undergo a fusion surgery or she could continue conservative therapy and learn to live with the pain.  But Ms. Walls, understandably nervous about the risks involved with back surgery, sought out a second opinion.  At that point, Ms. Walls connected with the doctors at defendant-appellant Center for Advanced Spine Technologies, Inc., ("CAST"), and Dr. Nael Shanti became her physician.

2

{¶3} According to Ms. Walls, at the end of her first appointment (and most subsequent appointments), Dr. Durrani came into the room and advised her she needed a fusion surgery—the exact treatment she was trying to avoid. As a result of Ms. Walls's hesitancy to undergo invasive back surgery, Dr. Shanti treated her for the first eight months using a conservative approach involving epidurals and physical therapy. When that failed to alleviate the pain, Ms. Walls agreed to let Dr. Shanti perform a less-invasive laminectomy decompression surgery in 2012 with the understanding that the more invasive full fusion surgery (advocated by Dr. Durrani) might still be necessary down the road. The laminectomy relieved some of Ms. Walls's pain and she started physical therapy with the intent to undergo the fusion in approximately six months. However, before that could happen, Medicaid cancelled Ms. Walls's insurance when her son turned 18, leaving her without adequate insurance to cover her physical therapy or to pursue the follow-up fusion surgery with Dr. Shanti. Ms. Walls attempted, to no avail, to have the Veteran's Administration step in and pay for the follow up treatments with CAST. Deprived of the option to have the needed fusion surgery and stabilize her back, and in light of CAST "dropping her like a hot potato" because she lacked insurance, Ms. Walls began to experience adverse results from the laminectomy.

{¶4} Typically, when someone sues over malpractice, she sues the doctor who performed the surgery or procedure in question. But that did not happen here. Instead, Ms. Walls entered into a release with Dr. Shanti that absolved him of any liability and obligated him to testify against Dr. Durrani. She eventually filed suit against Dr. Durrani for negligence, battery, lack of informed consent, intentional

infliction of emotional distress, and fraud; and filed claims against CAST for vicarious liability based on CAST's alleged negligent hiring and supervision.

{¶5} The litigation strategy was apparently premised on holding CAST and Dr. Durrani vicariously liable for Dr. Shanti's actions, a path subsequently foreclosed by another case with strikingly similar facts. *See White v. Durrani,* 2021-Ohio-566, 168 N.E.3d 597, ¶ 32 (1st Dist.). Dr. Durrani and CAST accordingly moved for summary judgment on the vicarious liability claims, and the trial court agreed—it entered partial summary judgment in favor of the defendants on that issue, holding that releasing Dr. Shanti from liability meant that CAST could be secondarily liable only if Dr. Durrani himself was found directly liable in negligence.

{¶6} Although Ms. Walls had previously testified and responded to discovery that her primary treating doctor was Dr. Shanti, on the eve of summary judgment, anticipating the problems with the vicarious liability theory occasioned by *White*, she changed her tune and recalled Dr. Durrani's involvement in her treatment. Notwithstanding the inconsistency in her testimony, the trial court found this sufficient to stave off summary judgment on the direct liability claim, and the case accordingly proceeded to trial. Ultimately, the jury found Dr. Durrani negligent for recommending a surgery outside the standard of care and for failing to obtain informed consent. Dr. Durrani moved for a directed verdict after Ms. Walls's case-in-chief and at the close of all the evidence, and moved for judgment notwithstanding the verdict after the jury's verdict, arguing that Dr. Durrani was not the cause of Ms. Walls's injuries. The trial court denied all three motions. Dr. Durrani now appeals, bringing three assignments of error. In his first assignment of error, Dr. Durrani asserts that the trial court should have entered a directed verdict in his favor because

Ms. Walls did not present evidence that Dr. Durrani proximately caused the injury. We ultimately find this assignment dispositive in light of a record barren of any evidence establishing causation on Dr. Durrani's part.

II.

{¶7} The traditional duty-breach-causation common law analysis applies to medical negligence claims. *See Kurzner v. Sanders,* 89 Ohio App.3d 674, 681, 627 N.E.2d 564 (1st Dist.1993). Causation requires both "a factual nexus between the breach and injury (i.e., actual cause) and a significant degree of connectedness that justifies imposing liability (i.e., proximate cause)." *Schirmer v. Mt. Auburn Obstetrics & Gynecologic Assocs.*, 108 Ohio St.3d 494, 2006-Ohio-942, 844 N.E.2d 1160, ¶ 40 (Moyer, C.J., concurring in syllabus and judgment only), citing *Hester v. Dwivedi*, 89 Ohio St.3d 575, 581, 733 N.E.2d 1161 (2000). *See Sizemore v. Deemer*, 2021-Ohio-1934, 174 N.E.3d 5, ¶ 21 (3d Dist.) ("Importantly, 'cause in fact' is not the same as proximate cause and does not fulfill the entirety of the negligence causation requirement."). In determining causation, a court first considers whether cause in fact has been established. *See Ackison v. Anchor Packing Co.*, 120 Ohio St.3d 228, 2008-Ohio-5243, 897 N.E.2d 1118, ¶ 48. "Once cause in fact is established, a plaintiff must then establish proximate cause in order to hold a defendant liable." *Id.* Although Dr. Durrani insists, invoking *White*, that he owed no duty of care to Ms. Walls because no physician-patient relationship existed between them, we ultimately need not ponder that issue in light of the clarity of the causation question.

{¶8} In both of his directed verdict motions and his motion for judgment notwithstanding the verdict, Dr. Durrani argued that Dr. Shanti alone bore responsibility because he operated on Ms. Walls and that any potential liability on the

5

part of Dr. Durrani for recommending a fusion surgery ended when Dr. Shanti intervened and performed a different surgery. A motion for a directed verdict should be granted when, after construing the evidence most strongly in favor of the non-moving party, the trial court finds that upon any determinative issue, "reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." *White v. Leimbach*, 131 Ohio St.3d 21, 2011-Ohio-6238, 959 N.E.2d 1033, ¶ 22. In order for Ms. Walls's claims to reach the jury, she must establish evidence for each element of them, including causation. *See Ruta v. Breckenridge-Remy Co.,* 69 Ohio St.2d 66, 68-69, 430 N.E.2d 935 (1982). And where, as here, some crucial causal link is missing, the court should direct a verdict rather than allow the jury to reach a decision based on speculation or conjecture. *See Westinghouse Elec. Corp. v. Dolly Madison Leasing & Furniture Corp.*, 42 Ohio St.2d 122, 126-127, 326 N.E.2d 651 (1975) ("[T]he court is to direct a verdict where * * * some crucial link in the evidence is missing."). Because "[a] motion for a directed verdict raises a question of law," we review the trial court's decision de novo. *Ruta* at 69.

{¶9} Ms. Walls begins her defense of the verdict by claiming that Dr. Durrani failed to broach the causation issue at the trial level when he advanced the motions for directed verdict. Our review of the record indicates otherwise. While counsel might not have used the exact words "intervening" or "superseding" causation during the hearing on the motions for a directed verdict, Dr. Durrani asserted the legal theory of proximate cause multiple times in his motions for a directed verdict, which sufficed to preserve it. *See Trax Constr. Co. v. Village of Reminderville,* 11th Dist. Lake Nos. 2020-L-113, 2020-L-127, and 2021-L-008, 2021-Ohio-3481, ¶ 30

(finding issue properly preserved despite not using exact nomenclature). During the directed verdict hearing, counsel framed the issue as one of causation, emphasizing "the issue of Dr. Durrani's actual involvement in the surgery * * * because the proof before this Court is that Ms. Walls does not know who performed the surgery." This argument built upon the objections raised in Dr. Durrani's answer, at summary judgment, and throughout the trial that he did not perform or recommend the surgery and thus cannot be held liable. *See State v. Whitfield*, 1st Dist. Hamilton No. C-190591, 2020-Ohio-2929, ¶ 15 ("Although perhaps not the main thrust of his argument before the trial court, [defendant] sufficiently challenged the frisk for purposes of preserving his right to raise the issue on appeal."). Finding this issue preserved, we turn to the merits of the question.

### III.

{¶10} Let's start with the issue of cause in fact and whether Dr. Durrani performed the surgery in question. The test for actual causation is referred to in legal circles as the "but for" test, meaning that the defendant's conduct is the actual cause if the harm would not have occurred "but for" the defendant's act. *Ackison*, 120 Ohio St.3d 228, 2008-Ohio-5243, 897 N.E.2d 1118, at ¶ 48 ("This requirement is, in essence, a 'but for' test of causation, which is the standard test for establishing cause in fact."). On appeal, somewhat inconsistent with her trial approach, Ms. Walls seems to speculate that perhaps Dr. Durrani had a hand in the surgery. This belief rests on two premises: first, that Dr. Durrani's name was listed as the assistant on the initial schedule of the operating room, and second, that Dr. Durrani visited her room after the surgery. Neither supposition puts the scalpel in Dr. Durrani's hands. It is not enough for Ms. Walls to speculate that Dr. Durrani "might

7

have" caused her injury. *See Gedra v. Dallmer Co.*, 153 Ohio St. 258, 91 N.E.2d 256 (1950), paragraph two of the syllabus ("In a negligence action, it is not sufficient for plaintiff to prove that the negligence of defendant might have caused an injury to plaintiff."). While Dr. Durrani was listed as a possible assistant when CAST booked the operating room, the nursing logs from the actual surgery confirm that he never entered the operating room during the procedure. Dr. Shanti's post-operative notes make no mention of Dr. Durrani participating in the operation, a point ratified in his testimony, wherein Dr. Shanti explained that he alone performed the surgery. No witness testified, and no document established, that Dr. Durrani played any role in the actual surgery. That may explain why, during the trial, all of the witnesses, and even counsel and the court, proceeded on the premise that Dr. Shanti was the surgeon.

{¶11} Nor do we need to speculate on this point because the jury did not find that Dr. Durrani performed the surgery. Instead, it explained, in response to interrogatories, that it based its negligence conclusion on Dr. Durrani's causing injury to Ms. Walls through his recommendation of surgery: "Defendant suggested surgery for Ms. Walls outside the standard of care." Therefore, we reject any notion that the jury could have found Dr. Durrani to be the actual cause of Ms. Walls's injuries by performing the surgery. If causation exists, we must find it elsewhere.[1]

{¶12} Now, let's shift the focus to the surgical recommendation. Before diving in, however, we pause to note a somewhat confusing interaction that undoubtedly muddied the waters on this issue. While providing instructions to the

---

[1] Unfortunately, Ms. Walls's counsel failed to provide a substantive defense of causation in their appellate brief, which has complicated our review of this matter.

jury, the trial court correctly counseled jurors that liability for any negligence could only be imposed if the negligence directly and proximately caused the injury. Confused about the distinction between those concepts, during deliberations, the jury asked for clarification on the word "directly" in the interrogatory, which charged them with determining whether Dr. Durrani's negligence directly and proximately caused the injury at issue. The trial court responded that "[d]irect and proximate mean the same" thing and ordered the jury to strike the word "direct" from the interrogatory, leaving only proximate cause to be decided. In a case with causation at center stage, this conflation of two important concepts certainly created the potential for confusion. But without any objection from Dr. Durrani, we must presume that actual causation was satisfied, and we accordingly shift our attention to proximate causation.

{¶13} To find that Dr. Durrani's actions represented the proximate cause of Ms. Walls's injuries in this manner, the harm she suffered as a result of the laminectomy must be the natural and probable consequence of Dr. Durrani's suggested fusion surgery. *See Strother v. Hutchinson*, 67 Ohio St.2d 282, 287, 423 N.E.2d 467 (1981). Practically speaking, proximate cause limits Dr. Durrani's liability in negligence to the foreseeable consequences of his actions. *Johnson v. Univ. Hosps. of Cleveland,* 44 Ohio St.3d 49, 57, 540 N.E.2d 1370 (1989) ("[L]egal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability."). The burden of proving proximate cause rests with Ms. Walls. *See Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 38.

9

{¶14}   The negligence alleged by Ms. Walls during trial was that Dr. Shanti's failure to perform the full fusion "left her spine in such a situation that it was doomed to collapse," resulting in her suffering from post-laminectomy syndrome.   Yet Ms. Walls emphasized at trial that Dr. Durrani suggested a fusion surgery from the outset—"he recommended fusion, and he said that fusion was a very well-known technique and they had gotten much better at perfecting it."   Later in her testimony, she reiterated the point: "he had always wanted me to get a fusion."   She, however, adamantly opposed this option: "I didn't want to do a full fusion * * * I wanted to try to do more conservative surgery if that was possible."   We are confounded to understand how Dr. Durrani's suggested fusion surgery could be both outside the standard of care and the solution to her chronic pain.   During closing arguments, Ms. Walls's counsel asserted that even though she didn't want the fusion, Dr. Durrani should have told her, "You need a fusion."   Yet that is precisely what he did, on multiple occasions apparently.   Ms. Walls testified that Dr. Durrani told her fusion surgery was the best answer because "there were some bone spurs that would continue getting worse" unless she had the surgery at that point.   Despite that, Ms. Walls "wanted to wait and try other options first to see if anything else worked."

{¶15}   Try as he might, Dr. Durrani could not convince Ms. Walls to skip conservative treatments and proceed straight to the more invasive surgery.   It was certainly within Ms. Walls's prerogative to follow one path before traveling down the other.   But she cannot then blame Dr. Durrani if, by the time she was ready to try his approach, a series of unfortunate events unfolded to preclude that option.[2]   In other

---

[2] Ms. Walls acknowledged that, had her Medicaid not been terminated, she would have proceeded with the fusion surgery.

words, Ms. Walls made an informed decision to disregard Dr. Durrani's advice and follow Dr. Shanti's more conservative surgical approach. Any initial negligence flowing from the recommendation of fusion surgery was cut off by Dr. Shanti's independent recommendation and performance of the laminectomy. There is no causal link between the two and we find it impossible to see how any injury Ms. Walls suffered from the laminectomy could be the natural and probable consequence of Dr. Durrani recommending a fusion surgery.

{¶16} In a similar vein, the jury's informed consent decision suffers from the same proximate cause problem. To prevail on this claim, Ms. Walls bears the burden of identifying the risks of Dr. Durrani's recommended medical procedure through expert testimony and showing that the risk identified materialized and proximately caused her injury. *White*, 131 Ohio St.3d 21, 2011-Ohio-6238, 959 N.E.2d 1033, at ¶ 2. It goes without saying that because Ms. Walls did not heed Dr. Durrani's advice to undergo a fusion surgery, no injury from a fusion materialized. Beyond that, explicit in the tort of lack of informed consent is the assumption that the patient actually underwent the procedure at hand. *See id.* at ¶ 26-29 ("The tort of lack of informed consent is established when * * * a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy."). And if there is one piece of certainty on this record, it is that Ms. Walls repeatedly refused the surgery urged by Dr. Durrani.

{¶17} When pressed during oral arguments to point us in the direction of any evidence connecting Dr. Durrani to the laminectomy recommendation, Ms. Walls's counsel steered us to a question of who recommended the laminectomy

11

decompression surgery, in which she responded: "That would be Dr. Shanti and Dr. Durrani. I think Dr. Shanti * * * agreed with me on the more conservative measures, and Dr. Durrani agreed to try that * * * because I didn't want to do the full-out fusion." This comment, however, perpetuates the distinction Ms. Walls drew in her testimony between Dr. Shanti recommending a more conservative path, and Dr. Durrani insisting on the more invasive option. This is a bridge too far to establish causation on Dr. Durrani's part—the tortfeasor in this instance was Dr. Shanti, who not only recommended but performed the surgery that counsel described as "completely unnecessary" during closing arguments. In addition, proximate cause, by definition, does not include acts interrupted by another person's tortious conduct. *See Dubose v. McCloud*, 1st Dist. Hamilton No. C-190690, 2020-Ohio-4972, ¶ 10 ("Courts define proximate cause as 'that which in a natural and continuous sequence, *unbroken by any new, independent cause*, produces that event and without which that event would not have occurred.' ") (Emphasis added.), quoting *Aiken v. Indus Comm.,* 143 Ohio St. 113, 117, 53 N.E.2d 1018 (1994). Thus, if another responsible agent—such as Dr. Shanti—intervened and committed a new and independent act, Dr. Durrani is relieved from liability. *See Shaw Steel, Inc. v. Ronfeldt Mfg.,* 8th Dist. Cuyahoga No. 102665, 2016-Ohio-1117, ¶ 44. That is precisely the situation here. Dr. Shanti was a conscious and responsible agent who not only could have, but in fact did, eliminate any hazard from a fusion surgery by performing an entirely different procedure and thus relieving Dr. Durrani of liability. Indeed, if Ms. Walls had followed Dr. Durrani's recommendation, she would have undergone the precise surgery she finds herself seeking to this day.

{¶18} Even though the trial court granted summary judgment on the claims of vicarious liability, shadows of that theory permeated the trial. Ms. Walls and her counsel dubbed Dr. Shanti the "assistant" to Dr. Durrani, portraying him as a neophyte surgeon and seeking to hold Dr. Durrani responsible for Dr. Shanti's actions. But with vicarious liability off the table (Ms. Walls did not cross appeal that issue), Ms. Walls needed to do more to establish causation than simply characterize Dr. Shanti as the understudy. And that is where the trial record comes up empty.

{¶19} Bolstering this conclusion is apparent tension in the jury interrogatory responses. On the one hand, the jury found that Dr. Durrani's recommendation of a surgery constituted negligence that proximately caused Ms. Walls's harm. On the other, the jury found that Dr. Durrani made fraudulent misrepresentations to her about the need for surgery, but concluded that those representations did *not* proximately cause her harm. It's difficult to understand how both of these propositions could be true on this record. Neither side challenged any inconsistency in the interrogatory responses, but we simply highlight how this reinforces our assessment of the trial record.

{¶20} Because Ms. Walls's harm (based on the theory pursued at trial) is attributable to the rejection of Dr. Durrani's advice, she has not met her burden of proving that Dr. Durrani proximately caused her injury. The trial court accordingly should have granted a directed verdict because there was insufficient evidence of causation as a matter of law to support the claims of negligence and informed consent against Dr. Durrani.

{¶21} We conclude by acknowledging the very real pain and suffering that Ms. Walls has suffered as a result of her chronic back conditions and by virtue of her

surgery. Nothing in this opinion should be viewed as detracting from that reality. But the cause of her injury flowing from her surgery was Dr. Shanti, not Dr. Durrani, and we cannot allow our sympathies to substitute for evidence.

\*      \*      \*

{¶22}   We accordingly sustain the first assignment of error, decline to address the others as moot, and reverse the trial court's judgment and remand the cause for entry of judgment in favor of defendants.

Judgment reversed and cause remanded.

**MYERS, P. J.** and **CROUSE, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion

14