[Cite as *Niehaus v. Durrani*, 2023-Ohio-4818.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| VANESSA NIEHAUS, Executrix of the Estate of Veronica Yeakle, deceased, | : | APPEAL NOS. C-220019 |
| | | C-220035 |
| | : | TRIAL NO.   A-1600235 |
| Plaintiff-Appellee/Cross-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| ABUBAKAR ATIQ DURRANI, M.D., | : | |
| | | |
| and | : | |
| | | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : | |
| | : | |
| Defendants-Appellants/Cross-Appellees, | : | |
| | | |
| and | : | |
| | | |
| WEST CHESTER HOSPITAL, LLC, | : | |
| | | |
| and | : | |
| | | |
| UC HEALTH, | : | |
| | | |
| Defendants. | : | |

Civil Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Reversed and Cause Remanded in C-220019;
Appeal Dismissed in C-220035

Date of Judgment Entry on Appeal: December 29, 2023

*Robert A. Winter, Jr.*, *James F. Maus*, and *Benjamin M. Maraan, II*, for Plaintiff-Appellee/Cross-Appellant,

*Taft Stettinius & Hollister LLP*, *Philip D. Williamson*, *Aaron M. Herzig*, *Russell S. Sayre*, *Anna M. Greve*, *Lindhorst & Dreidame Co., LPA*, *Michael F. Lyon*, *James F. Brockman*, and *Paul J. Vollman*, for Defendants-Appellants/Cross-Appellees.

**CROUSE, Presiding Judge.**

{¶1}   Following a jury trial, defendants-appellants/cross-appellees Dr. Abubakar Atiq Durrani and his spinal surgery practice, the Center for Advanced Spine Technologies, Inc., ("CAST") (collectively, "appellants") were found liable for medical negligence and lack of informed consent regarding spinal surgery performed by CAST surgeon Dr. Nael Shanti on plaintiff-appellee/cross-appellant Veronica Yeakle.[1] Appellants now argue that they were entitled to a directed verdict, or, in the alternative, that the trial court should have granted their motion for a new trial. We agree that appellants were entitled to a directed verdict as to the lack of informed consent, but not as to medical negligence. We also agree that the trial court's error in improperly admitting unfairly prejudicial evidence necessitates a new trial.

## I. Factual and Procedural History

{¶2}   In 2013, Ms. Yeakle went to the emergency room after a fall related to a problem with her right knee. At the hospital, Dr. Durrani was called to consult on whether the problem could be neurological. After reviewing the CT scan of Ms. Yeakle's back, Dr. Durrani diagnosed several spinal issues that he believed caused the problems with Ms. Yeakle's knee. Dr. Durrani scheduled surgery to correct these issues, but on the day of surgery, Dr. Durrani was unavailable. Dr. Shanti, another surgeon in Dr. Durrani's practice, filled in for Dr. Durrani and performed the surgery.

{¶3}   Following the surgery, Ms. Yeakle suffered significant back pain that had not existed previously. Ms. Yeakle contends that her knee problems were caused by a meniscus tear, an injury within the knee, not by an issue in her spine. Thus, she

---

[1] After the trial and during the litigation of posttrial motions, Ms. Yeakle passed away and was substituted in this action by her daughter and executrix of her estate, Vanessa Niehaus. For the purposes of our analysis, however, we will refer to Ms. Yeakle as if she remained a party.

argues, the surgery recommended by Dr. Durrani and performed by Dr. Shanti was medically unnecessary.

{¶4} In 2016, Ms. Yeakle filed suit against Dr. Durrani and CAST, as well as the hospital where the surgeries were performed and the parent company of the hospital (collectively, the "hospital defendants").[2] Ms. Yeakle asserted claims against Dr. Durrani for medical negligence; battery; lack of informed consent; intentional infliction of emotional distress; fraudulent misrepresentation; and spoliation of evidence. She asserted claims against CAST for vicarious liability; negligent hiring, retention, and supervision; spoliation of evidence; violation of the Ohio Consumer Sales Practices Act; and fraudulent misrepresentation. Although he performed the surgery at issue, Dr. Shanti was not named as a party.

{¶5} Following a week-long trial, only the claims for medical negligence, lack of informed consent, and fraudulent misrepresentation were submitted to the jury. The parties agreed that if the jury found Dr. Durrani liable on any of the claims, CAST would be held vicariously liable. The jury found Dr. Durrani liable for medical negligence and lack of informed consent. Appellants filed a variety of posttrial motions, including motions for judgment notwithstanding the verdict, a new trial, remittitur, and a setoff. The trial court granted appellants' motion for a setoff but denied the remaining motions. This appeal timely followed.

## II. Analysis

{¶6} In their first assignment of error, appellants argue that the trial court erred by denying their motions for a directed verdict or for judgment notwithstanding the verdict on multiple grounds. In their second assignment of error, appellants argue

---

[2] The hospital and its parent company reached a separate settlement with Ms. Yeakle and were dismissed as defendants. They are not parties to this appeal.

that the trial court erred by denying their motion for a new trial based on improper jury instructions and evidentiary errors.

### A. *First Assignment of Error*

{¶7}   This court reviews the denial of a motion for a directed verdict de novo. *Walls v. Durrani*, 1st Dist. Hamilton No. C-200167, 2021-Ohio-4329, ¶ 8. "A motion for a directed verdict should be granted when, after construing the evidence most strongly in favor of the nonmoving party, the trial court finds that upon any determinative issue, 'reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party.' " *Id.*, quoting *White v. Leimbach*, 131 Ohio St.3d 21, 2011-Ohio-6238, 959 N.E.2d 1033, ¶ 22. In a case where "some crucial causal link is missing, the court should direct a verdict rather than allow the jury to reach a decision based on speculation or conjecture." *Id.*, citing *Westinghouse Elec. Corp. v. Dolly Madison Leasing & Furniture Corp.*, 42 Ohio St.2d 122, 126-127, 326 N.E.2d 651 (1975). We review the denial of a motion for judgment notwithstanding the verdict under the same standard. *Setters v. Durrani*, 2020-Ohio-6859, 164 N.E.3d 1159, ¶ 27 (1st Dist.), fn. 3.

### 1. *Liability for Medical Negligence*

{¶8}   Appellants argue that Dr. Durrani cannot be held liable for medical negligence or lack of informed consent because he did not perform the surgery on Ms. Yeakle. Rather, they contend that Dr. Shanti is the only party who can properly be held responsible for those claims.

{¶9}   We have previously denied plaintiffs' recovery from Dr. Durrani where he was not the actual surgeon who performed the procedure at issue on the plaintiff. *See White v. Durrani*, 2021-Ohio-566, 168 N.E.3d 597 (1st Dist.); *Walls*, 1st Dist.

5

Hamilton No. C-200167, 2021-Ohio-4329.

{¶**10**} In *White*, we held that no physician-patient relationship existed between Dr. Durrani and the plaintiff because Dr. Durrani neither recommended nor performed the surgery. *White* at ¶ 19. As a result, Dr. Durrani neither owed the plaintiff a duty of care, *id.*, nor owed her any duty to obtain informed consent to surgery. *Id.* at ¶ 22.

{¶**11**} In *Walls*, we noted that Dr. Durrani recommended a more aggressive surgery, but the plaintiff opted for a more conservative approach offered by and performed by Dr. Shanti. *Walls* at ¶ 3. Her condition later worsened, and she apparently needed the more aggressive surgery, but could no longer afford it after losing Medicaid coverage. *Id.* We found that Dr. Durrani could not be held liable because Dr. Durrani did not proximately cause the plaintiff's injury when she expressly rejected Dr. Durrani's medical advice in favor of the treatment recommended by Dr. Shanti. *Id.* at ¶ 20.

{¶**12**} As to Ms. Yeakle's medical-negligence claim, the case is distinguishable. Ms. Yeakle did have a physician-patient relationship with Dr. Durrani. Dr. Durrani was the physician who treated her right up until the last-minute substitution of Dr. Shanti as the surgeon for Ms. Yeakle's surgery. Therefore, Dr. Durrani did owe Ms. Yeakle the duty of care that was missing in *White*. Further, unlike *Walls* where the plaintiff rejected Dr. Durrani's recommendation, the surgery Dr. Shanti performed on Ms. Yeakle was the procedure recommended, planned, and scheduled by Dr. Durrani.

{¶**13**} Construing the evidence most strongly in favor of Ms. Yeakle, reasonable minds could conclude that Dr. Durrani was responsible for medical negligence in his diagnosis and subsequent recommendation for a surgery that

resulted in worsening Ms. Yeakle's condition.

**{¶14}** The trial court did not err in denying appellants' motion for a directed verdict as to the medical-negligence claim.

## 2. Liability for Lack of Informed Consent

**{¶15}** As to the informed-consent claim, we agree that Dr. Shanti's actions cut off Dr. Durrani's liability. The informed-consent form Ms. Yeakle signed after meeting with Dr. Durrani was apparently defective because it indicated the wrong procedure. However, after Dr. Shanti replaced Dr. Durrani as the surgeon scheduled to operate on Ms. Yeakle, Dr. Shanti undertook to obtain informed consent from Ms. Yeakle. Ms. Yeakle nonetheless claimed that Dr. Durrani was liable for a failure to obtain informed consent before Dr. Shanti performed her surgery. Ms. Yeakle disputed that she was able to give informed consent at the time Dr. Shanti allegedly obtained her consent due to her confusion caused by the medication she was on.

**{¶16}** There is little case law in Ohio on the question of whether one doctor can be held liable for another doctor's failure to obtain informed consent. Generally, a referring physician is not responsible for obtaining informed consent from a patient when referring the patient to a specialist where the referring physician does not exercise control over the performance of the procedure. *See, e.g., Stephens v. Coith*, S.D.Ohio No. C-1-89-0104, 1990 U.S. Dist. LEXIS 13426, 29 (Aug. 31, 1990); *Durell v. Lewis*, 6th Dist. Lucas No. L-06-1138, 2007-Ohio-97, ¶ 13.

**{¶17}** However, under circumstances where the referring physician orders a specific procedure that will be performed by a specialist, the referring physician may owe the patient a duty to obtain the patient's informed consent before the specialist performs the procedure. *See Kashkin v. Mt. Sinai Med. Ctr.*, 142 Misc.2d 863, 865,

7

538 N.Y.S.2d 686 (1989) (holding that the referring physician was responsible for obtaining informed consent where he ordered a diagnostic procedure performed by another doctor); *Koapke v. Herfendal*, 2003 ND 64, 660 N.W.2d 206, ¶ 23 ("The referring physician can be held liable only when that physician has formally ordered a procedure or actually participated in the treatment or procedure.").

{¶18} In such a case, however, if the treating physician independently obtains the patient's informed consent, the chain of causation to the referring physician is broken. *See Shkolnik v. Hosp. for Joint Diseases Orthopaedic Inst.*, 211 A.D.2d 347, 351, 627 N.Y.S.2d 353 (1995) ("[A]n informed consent obtained by a treating physician may cure the failure of the referring physician to obtain consent * * *.").

{¶19} In the case at bar, Ms. Yeakle argues that Dr. Durrani failed to obtain her informed consent. Even assuming that Ms. Yeakle is correct that the consent obtained by Dr. Durrani was defective, her argument must fail.

{¶20} On the morning of surgery, Dr. Shanti endeavored to obtain Ms. Yeakle's informed consent himself. Because Dr. Shanti undertook the effort to ensure that Ms. Yeakle had given her informed consent to the procedure, he broke the chain of causation to any failure by Dr. Durrani to obtain informed consent. Dr. Durrani cannot be held liable for a lack of informed consent to the procedure performed by Dr. Shanti after Dr. Shanti attempted to obtain informed consent from Ms. Yeakle.

{¶21} Whether Dr. Shanti's attempt at informed consent was ineffective remains a question. But under these circumstances, Dr. Durrani is not liable for Dr. Shanti's potential failure to obtain informed consent. The trial court erred when it failed to grant Dr. Durrani's motion for a directed verdict on the claim of lack of informed consent.

### 3. Past Medical Damages

{¶22} Dr. Durrani argues that Ms. Yeakle was not entitled to pursue a claim for past medical expenses because all of Ms. Yeakle's expenses were paid by insurers, and therefore, Ms. Yeakle was not the real party in interest as to any of the past medical expenses. As a result, Dr. Durrani argues that Ms. Yeakle lacks standing to seek past medical damages.

{¶23} We recently addressed the distinction between standing and the real-party-in-interest rule. *McCann v. Durrani*, 1st Dist. Hamilton Nos. C-220025 and C-220033, 2023-Ohio-3953, ¶ 20-21. In *McCann*, we held that an injured plaintiff does not lack standing to invoke the jurisdiction of the court merely because her medical expenses were covered by her insurers when she also suffered other forms of compensable injury. *Id.* at ¶ 27.

{¶24} However, our disposition of this cause renders the issue moot. Because we are granting appellants a new trial, Ms. Yeakle will have the opportunity to cure any defect in her adherence to the real-party-in-interest rule.

### 4. Prejudgment Interest

{¶25} After the trial, Ms. Yeakle moved for prejudgment interest under R.C. 1343.03(C). Following an evidentiary hearing, the trial court granted the motion. Appellants now argue that the trial court erred in granting the motion because, they argue, Ms. Yeakle failed to make a good-faith effort to settle the case and appellants did not fail to make a good-faith effort to settle, as required by the statute.

{¶26} R.C. 1343.03(C) requires the court to determine a party's entitlement to prejudgment interest "at a hearing held subsequent to the verdict or decision in the action * * *." Our remand of this cause for a new trial renders this issue moot.

9

**{¶27}** Because we have determined that appellants were entitled to a directed verdict as to the claim for lack of informed consent, but not otherwise, we sustain appellants' first assignment of error in part and overrule it in part.

### B. Second Assignment of Error

**{¶28}** In their second assignment of error, appellants argue that they are entitled to a new trial on the basis of improper jury instructions and evidentiary errors. Appellants argue that the jury should have been instructed on superseding causation as a basis for cutting off Dr. Durrani's liability because Dr. Shanti performed the surgery. Appellants also argue that it was improper to admit evidence relating to the revocation of Dr. Durrani's medical licenses and other prejudicial evidence contained within a video composite of Dr. Durrani's deposition testimony. Appellants further argue that it was improper for the trial court to admit testimony by one of the expert witnesses that was outside of the witness's professional expertise. Finally, appellants claim that even if the individual errors were harmless, the cumulative-error doctrine entitles them to a new trial. We agree that the improperly admitted evidence necessitates a new trial.

**{¶29}** We review the denial of a motion for a new trial for abuse of discretion. *Pierce v. Durrani*, 2015-Ohio-2835, 35 N.E.3d 594, ¶ 10 (1st Dist.).

### 1. Superseding Causation

**{¶30}** At the close of the plaintiff's case and again at the close of evidence, appellants proposed the following instruction on superseding causation:

> A defendant is relieved of liability for a tortious act when there is a break
>
> in the chain of causation. A break will occur when there intervenes
>
> between an agency creating a hazard and an injury resulting therefrom,

another conscious and responsible agency which could or should have eliminated the hazard.

{¶31} Dr. Durrani's theory underlying the proposed jury instruction is that Dr. Shanti was "another conscious and responsible agency which could or should have eliminated the hazard." Dr. Durrani based this theory on the testimony from the plaintiff's experts that Dr. Shanti had an independent duty to evaluate the patient and determine for himself whether the planned surgery was indicated. Under this theory, regardless of whether Dr. Durrani was negligent in recommending the surgery, Dr. Shanti had the opportunity and obligation to cancel the surgery if it would be inappropriate. Dr. Durrani contends that Dr. Shanti's failure to eliminate the hazard to the patient would therefore cut off liability for Dr. Durrani's negligence.

{¶32} By contrast, Ms. Yeakle contends that Dr. Shanti's acts were not independent of Dr. Durrani's, and any negligence at Dr. Shanti's hands was, or should have been, foreseeable to Dr. Durrani as his employer. Dr. Shanti was instructed by Dr. Durrani to carry out the surgery that Dr. Durrani planned and Dr. Durrani convinced Ms. Yeakle to undergo. Ms. Yeakle argued below that Dr. Shanti, as a CAST employee, could not be a superseding cause of the harm to Ms. Yeakle because he is not independent from Dr. Durrani and CAST. Ms. Yeakle suggested that the proposed instruction would need to include a requirement that the intervening agency be "independent" or "unforeseeable," with detailed descriptions of what those terms mean.

{¶33} Although the appellants' proposed jury instruction does summarize the law as laid out in *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 323, 130 N.E.2d 824 (1955), paragraph one of the syllabus, it is an incomplete statement of the law.

After *Hurt*, the Ohio Supreme Court decided *Cascone v. Herb Kay Co.*, 6 Ohio St.3d 155, 451 N.E.2d 815 (1983). In *Cascone*, the court held, "Whether an intervening act breaks the causal connection between negligence and injury, thus relieving one of liability for his negligence, depends upon whether that intervening actor was a conscious and responsible agency which could or should have eliminated the hazard, and whether the intervening cause was reasonably foreseeable by the one who was guilty of the negligence." *Id.* at 159. Later, in *Berdyck v. Shinde*, 66 Ohio St.3d 573, 585, 613 N.E.2d 1014 (1993), the Ohio Supreme Court clarified that "the intervening cause must be disconnected from the negligence of the first person and must be of itself an efficient, independent, and self-producing cause of the injury." This law is reflected in *Ohio Jury Instructions*, CV Section 405.05(4) (Rev. Feb. 11, 2017), which states:

> INDEPENDENT SUPERSEDING CAUSE. Causal connection is broken when another's (negligent) (intentional) act, which could not have been reasonably foreseen and is fully independent of the defendant's negligence, intervenes and completely removes the effect of the defendant's negligence and becomes itself the (proximate) (direct) cause of the (injury) (death) (damages).

**{¶34}** Ordinarily, the trial court should give a requested instruction if (a) the instruction is a correct statement of the law, (b) it is applicable to the facts of the case, and (c) a reasonable jury could reach the conclusion sought by the instruction. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991). When evaluating whether an error in jury instructions constitutes reversible error, the reviewing court "must consider the jury charge as a whole and must determine

12

whether the charge probably misled the jury in such a manner that the complaining party's substantial rights were materially affected." *Gabriel v. Conrad*, 5th Dist. Richland No. 98-CA-115, 1999 Ohio App. LEXIS 6446, 22 (Dec. 20, 1999), citing *Becker v. Lake Cty. Mem. Hosp. W.*, 53 Ohio St.3d 202, 208, 560 N.E.2d 165 (1990).

{¶35} Whether the proposed jury instruction correctly states the law is a legal issue that we review de novo. *State v. Rac*, 2019-Ohio-893, 124 N.E.3d 878, ¶ 17 (2d Dist.). We review the trial court's decision as to whether the instruction is applicable to the facts and circumstances of the case for an abuse of discretion. *Id.* at ¶ 16. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *Id.*, quoting *State v. Grissom*, 2d Dist. Montgomery No. 25750, 2014-Ohio-857, ¶ 30.

{¶36} The appellants did not provide the trial court with an instruction that was a complete and accurate statement of the law. The omission of the requirement that the allegedly superseding acts could not have been reasonably foreseen and were fully independent made the proposed instruction a misstatement of the applicable law. *See, e.g., Adams v. Lift-A-Loft, Corp.*, S.D.Ohio No. C-3-94-170, 1999 U.S. Dist. LEXIS 22063, 9-10 (Nov. 12, 1999) ("[I]n light of *Cascone* and its progeny, *Hurt* and *Thrash* are no longer good law, to the extent that those earlier cases permit a defendant to establish the affirmative defense of intervening/superseding cause, without proving that the intervening act was not foreseeable."). Such an instruction would have misled the jury as to what sort of acts could cut off the defendant's liability to the plaintiff. Therefore, the trial court did not err in refusing to give the requested instruction.

### 2. Evidentiary Errors

{¶37} We next turn to the evidentiary errors that appellants argue improperly

tainted the jury's verdict. We review the trial court's decisions on admissibility of evidence for an abuse of discretion. *Stephenson v. Durrani*, 2023-Ohio-2500, 221 N.E.3d 1037, ¶ 43 (1st Dist.).

**{¶38}** Over the objection of counsel, the trial court permitted Ms. Yeakle to play a video containing excerpts from various depositions of Dr. Durrani (referred to by the parties as the "collage"). The collage purported to attack Dr. Durrani's credibility on a variety of topics. We recently ruled on the admissibility of the collage in *Stephenson*. Although the exact video played during the trial in this case was slightly edited from the version played in the *Stephenson* trial, the collage addressed the same topics we addressed in our prior decision. As we noted in *Stephenson*, the collage played in this case "covers an array of topics spanning Dr. Durrani's Pakistani heritage, unrelated malpractice lawsuits, medical license revocations, and resume inflation." *Id.* at ¶ 41. We concluded that the content of the video was inadmissible due to unfair prejudice under Evid.R. 403(A) and as improper other-acts evidence under Evid.R. 404(B). *Id.* at ¶ 47, 51.

**{¶39}** There is little to distinguish the video played in *Stephenson* from the one played in this case. Accordingly, it was an abuse of discretion for the trial court to admit the collage. *Id.* at ¶ 41.

**{¶40}** We must next consider whether the effect of the improperly admitted collage is harmless or requires a new trial. *Id.* at ¶ 77. "An improper evidentiary ruling constitutes reversible error only when the error affects the substantial rights of the adverse party or the ruling is inconsistent with substantial justice." *Setters*, 2020-Ohio-6859, 164 N.E.3d 1159, at ¶ 22, quoting *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, ¶ 35; *Mann v. Durrani*, 1st

Dist. Hamilton Nos. C-220022 and C-220039, 2023-Ohio-2672, ¶ 21. "In determining whether substantial justice has been done, a reviewing court must weigh the prejudicial effect of the errors and determine whether the trier of fact would have reached the same conclusion had the errors not occurred." *Id.*, citing *O'Brien v. Angley*, 63 Ohio St.2d 159, 164-165, 407 N.E.2d 490 (1980).

{¶41} During opening statements, Ms. Yeakle's trial counsel emphasized that Dr. Durrani was born and educated in Pakistan and was not a United States citizen, as well as Dr. Durrani's license revocation. During closing arguments, counsel reminded the jury of other, pending malpractice cases against Dr. Durrani, the "confusion" about where Dr. Durrani attended medical school, Dr. Durrani's "irregular attendance" at his fellowship, and his resume inflation.

{¶42} In this case, the record contained competing expert testimony as to whether the surgery recommended by Dr. Durrani was necessary. "As we have recognized in previous medical-malpractice cases filed against Durrani, where the record contains competing expert testimony on the central issues of the case, Durrani's credibility is likely to be a key factor considered by the jury when rendering its verdict. *Hounchell v. Durrani*, [2023-Ohio-2501, 221 N.E.3d 1020 (1st Dist.)], ¶ 73; *Setters* at ¶ 21." *Mann* at ¶ 23. In addition, the jury in this case found Dr. Durrani not liable for fraudulent misrepresentation, and we have determined that a directed verdict should have been granted on the informed-consent claim. Furthermore, while Dr. Durrani recommended the surgery, he did not perform the surgery. Nevertheless, the jury found him to be 100 percent liable for Ms. Yeakle's injuries. We note that there was expert testimony that Dr. Shanti had an independent duty to evaluate his patient and ensure that the procedure was medically indicated. "The jury's assessment of Durrani's

credibility was assuredly impacted by the admission of the evidence in the collage, and we cannot say that the outcome of the trial would have been the same but for its admission." *Id.* at ¶ 25.

**{¶43}** Because we conclude that it is questionable whether the trier of fact would have reached the same conclusion had the collage not been admitted, the cause must be remanded to the trial court for a new trial excluding the collage.

**{¶44}** Additionally, appellants argue that the court permitted improper expert opinion testimony by Ms. Yeakle's expert witness, Dr. Ranjiv Saini. Dr. Saini is a neuroradiologist and a senior member of the American Society of Neuroradiology. His practice consists of analyzing MRIs, CT scans, and x-rays and then communicating with treating physicians, including orthopedic surgeons and neurosurgeons. Dr. Saini offered opinions on a range of topics, including the interpretation of the doctors' operative notes, the standard of care in reviewing diagnostic images, and obtaining a patient's informed consent to surgery. Dr. Saini also testified to his opinion that Ms. Yeakle's signature on the informed consent form reflected an altered mental state.

**{¶45}** Appellants argue that it was improper under Evid.R. 702 for the trial court to permit Dr. Saini to opine as to what surgery should have been performed on Ms. Yeakle. Additionally, appellants argue that Dr. Saini has no expertise in handwriting analysis or graphology and should not have been permitted to testify about Ms. Yeakle's signature.

**{¶46}** Evid.R. 702 provides:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a

misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

**{¶47}** We have previously held that the trial court does not err in admitting a neuroradiologist's expert testimony about the necessity of the surgery and informed consent. *Adams v. Durrani*, 2022-Ohio-60, 183 N.E.3d 560, ¶ 57, 60 (1st Dist.). "Where 'fields of medicine overlap and more than one type of specialist may perform the treatment, a witness may qualify as an expert even though he does not practice the same specialty as the defendant.' " *Id.* at ¶ 51, quoting *Alexander v. Mt. Carmel Med. Ctr.*, 56 Ohio St.2d 155, 158, 383 N.E.2d 564 (1978). For radiologists, like Dr. Saini, and orthopedic surgeons, like Dr. Durrani, this overlap includes the standard of care in reviewing diagnostic images and deciding whether that image indicates a need for

surgery. *Id.* at ¶ 55, 57. And where certain issues (like informed consent) cut across all specialty areas, any trained medical doctor, regardless of specialty, could be qualified to testify. *Id.* at ¶ 60.

{¶48} Dr. Durrani attempts to distinguish Dr. Saini's testimony in this case from the testimony given in *Adams* by stating that his "testimony went far beyond the implications of Ms. Yeakle's diagnostic images. For example, Dr. Saini offered an opinion about which surgery Dr. Shanti *should have* performed." However, this issue was not preserved for appellate review by contemporaneous objection at trial, and therefore any potential error was waived. *Hounchell*, 2023-Ohio-2501, 221 N.E.3d 1020, at ¶ 63, citing *Adams* at ¶ 39.

{¶49} However, trial counsel for appellants did object to Dr. Saini's testimony about Ms. Yeakle's signature on the consent form, on the basis that he was not a handwriting expert. Dr. Saini testified, for example, that "people say that the way you write reflects what's going on in your brain," and applied this to Ms. Yeakle's signature to suggest that she was confused or hallucinating when she signed the consent form. Dr. Saini also referred to the field of graphology, stating that "it used to be a hobby of Albert Einstein. And he used to always say that people that are manic have a particular type of signature. People that have altered mental states, their signature changes."

{¶50} At no point did Dr. Saini testify as to the basis of any of his own "specialized knowledge, skill, experience, training, or education" in handwriting analysis or graphology.[3] Apparently, Dr. Saini was relying on hearsay from Dr.

---

[3] Evid.R. 901(B)(2) permits lay testimony "as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation." Dr. Saini's testimony on the relationship between one's mental state and one's handwriting falls well outside the ambit of Evid.R. 901(B)(2). Further, at no point did Dr. Saini testify as to any familiarity with Ms. Yeakle's handwriting not acquired for the purposes of litigation.

Einstein. And while we have no doubt about the credentials of Dr. Einstein in the field of physics, nothing in Dr. Saini's testimony demonstrates that the opinions he offered about Ms. Yeakle's mental state based on the appearance of her signature were "based on reliable scientific, technical, or other specialized information." Dr. Saini's appeal to authority in his invocation of Dr. Einstein does not lay a proper foundation for any expertise the witness himself might possess.

{¶51} Because Dr. Saini's testimony regarding Ms. Yeakle's mental state from analysis of her handwriting does not comply with Evid.R. 702, the trial court abused its discretion by admitting it. However, we need not consider whether this error is prejudicial because we have already determined that Dr. Durrani is entitled to a new trial based on the improper admission of the collage.

### 3. Cumulative Error

{¶52} Appellants argue that, even if the failure to instruct the jury on superseding causation and the evidentiary issues had been determined to be harmless errors, appellants would still be entitled to a new trial on the basis of the cumulative-error doctrine. *See Setters*, 2020-Ohio-6859, 164 N.E.3d 1159, at ¶ 60. Because we have found that the improperly admitted evidence warranted a new trial, we need not address appellants' cumulative-error argument.

{¶53} Because we agree that the trial court erred by denying appellants' motion for a new trial, we sustain appellants' second assignment of error.

### C. Cross-Assignment of Error: Setoff

{¶54} In her cross-appeal, Ms. Yeakle argues in a single assignment of error that the trial court erred in granting appellants a setoff of her award on the basis of a settlement reached with the hospital defendants. Because we are remanding this case

for a new trial, this assignment of error is moot. *See Stephenson*, 2023-Ohio-2500, 221 N.E.3d 1037, at ¶ 87.

### *III. Conclusion*

{¶55} In the appeal numbered C-220019, the trial court's judgments denying appellants' motion for a new trial and appellants' motion for a directed verdict on the claim for lack of informed consent are reversed. Ms. Yeakle's cross-appeal, numbered C-220035, is dismissed as moot. This cause is remanded for further proceedings consistent with the law and this opinion.

Judgment accordingly.

**BERGERON** and **KINSLEY, JJ.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.